Beatrice McCANDLESS,
Plaintiff-Appellant,

v.

The GREAT ATLANTIC AND PACIFIC
TEA COMPANY, INC.,
Defendant-Appellee.

No. 82–1359.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 21, 1982.

Decided Jan. 11, 1983.

Murray B. Woolley, Murray B. Woolley, Ltd., Chicago, Ill., for plaintiff-appellant.

Lynne F. Siegel, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant-appellee.

Before PELL and BAUER, Circuit Judges, and CAMPBELL,* Senior District Judge.

PELL, Circuit Judge.

The sole issue in this appeal is the propriety of a sanction levied against an attorney accused of willful abuse of the judicial process. Plaintiff's attorney, Murray B. Woolley, appeals the district court's order that he personally pay $1,000 of defendant's attorneys' fees. The court entered the award after finding that Woolley had not litigated in good faith. Counsel's derelictions included filing a frivolous lawsuit, misquoting precedent, and failing to respond to defendant's motion for fees and costs. Woolley

---

* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

now challenges the finding that plaintiff's claims were clearly without merit and, assuming that they were, the conclusion that his unmeticulousness in handling the litigation rose to the level of willful abuse of the judicial process.

## I. History of the Litigation

Acting as plaintiff's attorney, Woolley filed suit in state court against the Great Atlantic and Pacific Tea Company (A & P), plaintiff's employer, under section 301 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185. Plaintiff alleged that the A & P had breached several provisions of a collective bargaining agreement with plaintiff's union, had injured her reputation, and had deprived her of due process and equal protection of the laws under the National Labor Relations Act and Illinois law. Defendant removed the case to federal court and moved to dismiss for failure to state a claim. Judge Aspen granted defendant's motion, holding that plaintiff had failed to exhaust internal union remedies, a clear prerequisite to a section 301 suit, and that the remaining claims were simply unintelligible.

Defendant then moved for an award of attorneys' fees incurred in defending against plaintiff's meritless suit. Although the motion requested that the fees be paid by "either plaintiff *or plaintiff's counsel,*" Woolley failed to respond or request an extension of time in which to respond. Deprived of the benefit of counsel's arguments the court found that Woolley had failed to do the minimum research required before filing suit, had omitted a sentence that supported the defendant's position from a quotation, and had failed to enlighten the court as to the factual or legal basis of plaintiff's constitutional and reputational claims. The court concluded that these failings amounted to a willful abuse of the judicial process and as such fell within the holding of *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980), in which

the Supreme Court held that a federal court has the inherent power to assess attorneys' fees against an attorney who litigates in bad faith.[1]

Woolley filed a motion to set aside the award of fees. He explained that he was aware of the exhaustion requirement, but felt justified in filing suit because (1) plaintiff insisted upon suing the A & P "for reasons best known to her," and (2) plaintiff was excused from this requirement because her rights were uniquely "personal." Counsel credited his failure to respond to defendant's motion to the Christmas holidays and an office move. No explanation was offered for the failure to seek an extension of time or for the misquote. Judge Aspen found these excuses unsatisfactory and refused to set aside the order.

## II. Merits of Plaintiff's Suit

We are confronted at the outset with counsel's argument that the exhaustion requirement was not so clearly established that plaintiff's suit was frivolous. This argument is without merit. The exhaustion requirement was clearly established long before plaintiff filed suit. *See Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); Fox, *Section 301 and Exhaustion of Intra-Union Appeals: A Misbegotten Marriage,* 128 U.Pa.L.Rev. 989 (1980). Furthermore, Woolley stated in his motion to set aside the award that he was "fully aware" of the exhaustion requirement but that plaintiff had insisted that he file suit against the A & P. Finally, the argument that plaintiff was somehow excused from the duty to exhaust because her rights were personal is simply a misstatement of the law.[2]

This is not a case in which an attorney is unable to establish the factual basis of a claim at the time suit is filed, but reasonably believes that discovery or trial will cure any defects. Nor is this a case in which an attorney urges that prior holdings

---

1. Judge Aspen's opinion appears in 529 F.Supp. 476 (N.D.Ill.1982).

2. Significantly, counsel has now abandoned this untenable position and is not appealing the dismissal of plaintiff's suit.

should be re-examined. In either of these situations an attorney could be said to be litigating in good faith. This suit was simply a frivolous piece of litigation.

### III. The "Bad Faith" Exception to the "American" Rule

■ The general rule in this country is that each litigant must pay his own attorneys' fees.[3] The rationale is that "one should not be penalized for merely defending or prosecuting a lawsuit, and that the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel." *F.D. Rich Co. v. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974) (quoting *Fleishman Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967)). These interests are not implicated when the litigation is brought or maintained in bad faith. Accordingly "attorneys' fees may be awarded to a successful party when his opponent has acted in bad faith, vexatiously, wantonly or for oppressive reasons." 417 U.S. at 129, 94 S.Ct. at 2165; *see also Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975); *Hall v. Cole,* 412 U.S. 1, 4–5, 93 S.Ct. 1943, 1945–1946, 36 L.Ed.2d 702 (1973). Recently the Supreme Court expanded the bad faith exception to include awards against attorneys, holding that "If a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess these expenses against counsel who willfully abused judicial processes." *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980).

Woolley argues that *Roadway Express* permits an award of fees against counsel only upon a finding of subjective bad faith. It is not enough that counsel file a patently baseless lawsuit, he argues; counsel must also have acted with evil intent. Under this analysis an attorney who acts with "an empty head and a pure heart" is not responsible for the consequences.

This argument is not without merit. In *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), the Supreme Court distinguished a fee award under the American common-law rule from an award to a prevailing defendant under Title VII. The Court read the statute as limiting prevailing defendants to awards for "vexatious" litigation, but explicitly held that subjective bad faith was not required before an award could be entered against a plaintiff. In comparison the Court interpreted the American common-law rule as demanding some level of subjective bad faith before an award could be entered against a party. *See also Newman v. Piggie Park Enterprises,* 390 U.S. 400, 402 n. 4, 88 S.Ct. 964, 966 n. 4, 19 L.Ed.2d 1263 (1968) (making similar distinction regarding awards under Title II). At least one circuit has adopted this standard when assessing fees against either a party or the attorney. In *Nemeroff v. Abelson,* 620 F.2d 339, 348 (2d Cir.1980), the court stated that a claim must be "entirely without color *and* made for reasons of harassment or delay or for other improper purposes" before fees may be taxed. (Emphasis added).

This position is reasonable when a *party* is to be held responsible for his opponent's fees. "In this class of cases, the underlying rationale of 'fee shifting' is, of course, punitive, and the essential element in triggering the award of fees is therefore the existence of 'bad faith' on the part of the unsuccessful litigant." *Hall v. Cole,* 412 U.S. at 5, 93 S.Ct. at 1946. It is only as an incidental effect that the "bad faith" exception compensates the prevailing party for fees that should never have been incurred. *Copeland v. Martinez,* 603 F.2d 981, 984 (D.C.Cir. 1979), *cert. denied,* 444 U.S. 1044, 100 S.Ct. 730, 62 L.Ed.2d 729 (1980). The only litigants who are likely to be deterred are

---

3. In Great Britain the general rule is the opposite; the successful party is usually awarded reasonable attorneys' fees, *See Alyeska Pipe-* line Service Co. v. Wilderness Society, 421 U.S. 240, 247 n. 18, 95 S.Ct. 1612, 1616–1617 n. 18, 44 L.Ed.2d 141 (1975).

those who are aware that their claim is baseless but press on for some improper reason, such as harassment.

It is arguable that the Supreme Court meant to apply the same standard to attorneys in *Roadway Express.* The Court stated that a finding of "bad faith" would have to precede any sanction against an attorney. 447 U.S. at 767, 100 S.Ct. at 2465. The Court, however, also quoted language from *F.D. Rich Co. v. Industrial Lumber Co.,* 417 U.S. at 129, 94 S.Ct. at 2165, allowing fees for "vexatious" litigation. In light of the definition of "vexatious" adopted in *Christiansburg* it is not clear what standard the Court chose in *Roadway Express.* See Note: *Award of Attorneys' Fees Against Attorneys: Roadway Express, Inc. v. Piper,* 60 B.U.L. Rev. 950 (1980). An argument can be made that although subjective bad faith should be required before assessing fees against a *party,* a lesser standard should be applied when judging an attorney's conduct. Unlike a party, an attorney should be able to do the necessary research to evaluate properly the merits of a claim. Furthermore, it would seem that the personal animosity often existing between the actual litigants would be less likely to exist on the part of the attorney, toward either opposing counsel or his or her client. An attorney ordinarily files a suit with the expectation of receiving a fee from his or her client. Before filing suit, it would seem to be a reasonable expectation that the attorney do some basic research on the applicable law.

We need not decide whether this lower standard [4] was adopted in *Roadway Express* as the district court expressly found that Woolley was guilty of bad faith. Our task, then, is to determine if this finding was clearly erroneous.

### IV. Proof of Bad Faith

■ Judge Aspen based his finding of bad faith on the part of attorney Woolley upon the following factors: (1) the obvious meritlessness of the section 301 claim; (2) the failure to provide any factual or legal support for the sundry constitutional claims; (3) counsel's omission of a key sentence from a quotation; and (4) the failure to respond to defendant's motion for fees and costs. Judge Aspen found that these derelictions were not excused by Woolley's explanations.

The first two factors, which basically charge Woolley with bringing a frivolous lawsuit, cannot lightly be dismissed. Judge Learned Hand once stated that "as a litigant, I should dread a lawsuit beyond almost anything else short of sickness and death." *Quoted in* M. Mayer, The Lawyers 9 (1967). Defending any lawsuit, even one totally devoid of merit, and even though short of *Jarndyce* proportions, can be an expensive and time consuming process. Accordingly, although a finding of meritlessness will not support a finding of bad faith in and of itself, that an attorney filed such a suit is evidence that should be considered along with any other facts. *See Driscoll v. Oppenheimer,* 500 F.Supp. 174, 175 (N.D.Ill. 1980).

Other relevant factors are the reasons for filing the suit and whether the attorney was aware of the meritlessness of the action. Both factors weigh in favor of a finding of bad faith in this case. Counsel claimed that he filed this suit at plaintiff's insistence despite his knowledge of the exhaustion requirement. If there are any acceptable reasons for filing a frivolous suit, this is certainly not one of them. We agree with Elihu Root that "[a]bout half of the practice of a decent lawyer is telling would-

---

4. This lower standard may have already been adopted by the amendment of 28 U.S.C. § 1927, which now provides that:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

There would have been no reason to enact this legislation if the standard were to be subjective bad faith as *Roadway Express* already provided for such awards. We need not dwell on this point, however, as the district court did not base its award upon section 1927.

be clients that they are damned fools and should stop." *Quoted in* A. Kaufman, Problems in Professional Responsibility (1976). We refuse to accept the notion that counsel may shift responsibility for a frivolous suit to his client.

Woolley provided no other explanation for the suit other than his unfounded belief that plaintiff was somehow excused from the exhaustion requirement. We need not determine whether a sincere belief in the merits of a claim is sufficient to absolve an attorney from blame as that is not the case here. In support of his argument on this point to the district court counsel misquoted a case by omitting a sentence that undercut his position. We have previously stated that, "A sloppy mistake in a quotation might be at least understandable on the part of a careless attorney. But a deliberate misquote calls for strong condemnation." *Quality Molding Co. v. American National Fire Insurance Co.,* 287 F.2d 313, 316 (7th Cir.1961), *cert. denied,* 368 U.S. 826, 82 S.Ct. 45, 7 L.Ed.2d 29. Woolley offered no explanation for the misquote and, under the circumstances, we think that this is strong proof that he was aware of the weakness of his position.

Counsel's attitude toward this case was also evidenced by his failure to respond to defendant's allegations of bad faith until it became clear that he might be personally liable for the fees. He does not claim that he was unaware of the motion, and we agree with Judge Aspen that Christmas holidays and an office move do not relieve an attorney of the responsibility of at least requesting an extension of time.

In light of counsel's numerous and serious derelictions we hold that counsel's disregard for his duties as an attorney falls within the holding of *Roadway Express* and Judge Aspen's finding is not clearly erroneous.

### V. Amount of the Award

■ Counsel's final argument is that Judge Aspen abused his discretion in failing to set forth the factors relied upon in determining the amount of the award. Judge Aspen assessed fees at $1,000 after weigh-

ing defendant's unrebutted claim that actual attorneys' fees exceeded $6,000 against the possible "chilling" effect such an award may have on representation by counsel in the future. We fail to see what other factors are relevant in considering an award under the "bad faith" exception. The purpose of the award is to punish errant counsel and compensate the prevailing party for unnecessary expenses. Cases cited by counsel that detail other factors that should be considered in taxing fees under different exceptions to the American rule are simply inapposite.

In conclusion, we affirm the district court's order in its entirety. Under the circumstances of this case we award double costs to appellee to be paid by plaintiff's counsel, Murray B. Woolley, the real appellant in this case. Fed.R.App.P. 38.