VICTORY BEAUTY SUPPLY COMPANY, a Corporation, Plaintiff,

v.

LUS–TER–OIL BEAUTY PRODUCTS CO., a Corporation, Eagle Beauty Supply Co., Inc., A Corporation, Standard Beauty Supply Co., Inc., A Corporation, and Beth Lucas, an Individual d/b/a Hair Designs Unlimited, Defendants.

No. 80 C 5485.

United States District Court,
N.D. Illinois, E.D.

April 25, 1983.

Steven Rascher, Miriam J. Frank, Kael B. Kennedy, Katten, Muchin, Zavis, Pearl & Galler, Chicago, Ill., for plaintiff.

Norman Lettvin, Epton, Mullin, Segal & Druth, Chicago, Ill., for Standard Beauty Supply Co., Inc.

Aram Hartunian, Pressman & Hartunian, Chicago, Ill., for Eagle Beauty Supply Co., Inc.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This antitrust case was originally filed by Victory Beauty Supply Company ("Victory") against four defendants: Lus-Ter-Oil Beauty Products Company, Beth Lucas, Eagle Beauty Supply Company ("Eagle") and Standard Beauty Supply Company ("Standard"). The defendants were charged with circulating a letter which Victory claimed constituted an attempted boycott against it by the competing beauty supply companies. Defendants Lus-Ter-Oil and Lucas settled with Victory and were dismissed from the case on March 9, 1982. On March 2, 1982, Eagle entered into a settlement agreement with Victory. The remaining defendant, Standard, then sought to file a counterclaim against Victory and Eagle, charging them with violations of the Sherman Antitrust Act. Standard alleged that Victory had brought the original suit in order to force Standard out of business and that Eagle's acquiescence in the settlement agreement was an additional act of collusion by Victory and Eagle aimed at damaging Standard. This Court denied the filing of the counterclaim.[1] Shortly afterwards Standard also settled with Victory and was dismissed from the suit.[2] The only remaining issue before this Court is Eagle's motion to ob-

---

1. No. 80 C 5484, Memorandum Order (Aspen, J., March 22, 1982).

2. No. 80 C 5484, Memorandum Order (Aspen, J., July 2, 1982).

788

tain attorneys' fees and costs from Standard or its attorneys for the time spent opposing the filing of Standard's counterclaim. For reasons stated below, Eagle's motion is granted.

■ The "American Rule" on attorneys' fees, which is the general rule applied by federal courts, is that each party pays its own costs of litigation. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980). There are several exceptions to this rule. The most common are where a statutory provision exists authorizing the awarding of attorneys' fees and costs, *see, e.g.,* statutes cited in *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 260 n. 33, 95 S.Ct. 1612, 1623 n. 33, 44 L.Ed.2d 141 (1975), or where the opposing party has acted in bad faith. *Roadway,* 447 U.S. at 766, 100 S.Ct. at 2464.

■ Eagle has sought attorneys' fees and costs against either Standard or its attorneys. While the most common award is that made against an opposing party, the Supreme Court has held that federal courts, in narrow circumstances, have inherent power to assess fees against counsel. *Id.* at 765, 100 S.Ct. 2463. Attorneys' fees and costs will not be assessed against a party unless the claim was meritless and filed with vexatious intent. *McCandless v. Great Atlantic and Pacific Tea Co.,* 697 F.2d 198, 200 (7th Cir.1983). The Seventh Circuit recently suggested that the standard for assessing costs against counsel, rather than a party, may not be as stringent under *Roadway. Id.* at 201. We need not address that issue, however, since we find no arguments have been advanced by Eagle which would remove the presumption that the conduct objected to originated with the client rather than counsel.[3]

■ The "bad faith" exception to the general rule requires that the opposing party has filed a meritless claim and has acted "vexatiously, wantonly, and for oppressive

reasons." *Alyeska Pipeline, supra,* 421 U.S. at 258–59, 95 S.Ct. at 1622. The filing of a meritless lawsuit alone does not evidence bad faith, *McCandless, supra* at 201, but it is an indication of vexatious intent. *Driscoll v. Oppenheimer & Co.,* 500 F.Supp. 174, 175 (N.D.Ill.1980). Vexatious intent may be found in the conduct of the litigation as well as the filing of the claim. *Hall v. Cole,* 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d 702 (1973); *Stubbs v. DeRobertis,* No. 81–3286 (N.D.Ill. April 14, 1983). Further, the bad faith standard must be applied strenuously and not used to punish those who have "merely zealously defended their interests in the litigation." *J.H. Cohn & Co. v. American Appraisal Association, Inc.,* 628 F.2d 994, 1002 (7th Cir.1980).

■ In the present case, Standard asserts that its claim was not meritless, since the collusive settlement of litigation may be the basis of antitrust violations and a charge of sham litigation may be brought against a party who has filed even one lawsuit. It is indeed true that collusive settlement and the filing of a single sham suit may be actionable under the Sherman Antitrust Act. *See Duplan Corp. v. Deering Milliken, Inc.,* 540 F.2d 1215, 1221 (4th Cir.1976); *Cyborg Systems v. Management Science American, Inc.,* 1978–1 Trade Cases ¶ 61,927 at 73,917–18. But in the context of the instant case, the merit of such a claim exists only in a suit by Standard against Victory, not one that includes Eagle. Eagle is not charged with collusion in the original filing of the suit by Victory. Indeed, the only act of collusion charged against Eagle is settling with Victory.

■ It is well established that a non-settling defendant has no standing to complain about another defendant's settlement. *In re Beef Industry Litigation,* 607 F.2d 167, 172 (5th Cir.1979), *cert. denied,* 452 U.S. 905, 101 S.Ct. 3029, 69 L.Ed.2d 405 (1981); *In re Nissan Motor Corp. Litigation,* 552 F.2d

---

**3.** Eagle has suggested consideration of an award under the provisions of 28 U.S.C. § 1927. Since we find that an award of attorneys' fees and costs in this case, if it is justified

at all, should be made against Standard rather than their counsel, we need not address the provisions of 28 U.S.C. § 1927, which only provide for awards against counsel.

1088, 1103 n. 17 (5th Cir.1977). Nor can a non-settling defendant complain about the procedures by which the settlement was reached, as this would be doing indirectly what it cannot do directly. *In re Beef Industry Litigation, supra* at 172. It has further been held that non-settling defendants cannot force contribution from other defendants who choose to settle. *In re Corrugated Container Litigation,* 1979–1 Trade Cases ¶ 62,689 (S.D.Tex.1979).

█ In light of the above authorities, it is clear that Standard's claims against Eagle, based solely on Eagle's act of settling with Victory, lacked merit. We also find that the counterclaim against Eagle was pursued in bad faith. Standard was aware of the terms of the settlement between Victory and Eagle. They consisted of a payment by Eagle to Victory of $20,000 in exchange for Victory's voluntary dismissal of Eagle from the suit. It is not credible that Standard reasonably believed that Eagle's payment of $20,000 in exchange for release from the suit standing alone was an act of collusion.

█ Since an award of attorney's fees is punitive, it should be used only in exceptional circumstances for "dominating reasons of justice." *Cornwall v. Robinson,* 654 F.2d 685, 687 (10th Cir.1981). Here we find such circumstances. The voluntary resolution of litigation through settlement is viewed with great favor by the courts. *Airline Stewards and Stewardesses Ass'n, Local 550 v. Trans World Airlines, Inc.,* 630 F.2d 1164, 1166 (7th Cir.1980), *aff'd sub nom., Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Ransburg Eletro-Coating Corp. v. Spiller & Spiller, Inc.,* 489 F.2d 974, 978 (7th Cir.1973). In antitrust litigation, the doctrine which denies contribution from set-

tling defendants to non-settling defendants has been developed to preserve the incentive to settle: "Defendants have little incentive to buy peace from plaintiffs if they may be obliged to litigate the same claims against other defendants." *In re Corrugated Container Litigation, supra* at 77,879. We find the same rationale persuasive here. Eagle settled, no doubt in part, to avoid further attorneys' fees. Their act of settling is looked on with favor by courts. If we permit Standard to go unpunished, Eagle will suffer the very fate it attempted to avoid by following a course favored by the courts.

Eagle has presented a detailed accounting of time spent by their counsel on opposing the filing of Standard's counterclaim, both in federal and state court, and in asserting this motion for attorneys' fees. Eagle seeks a total of $5,630. Standard has not rebutted any specific charges, but has alleged that some of the enumerated charges were made for activity not related to the present case. We agree.[4]

In any award of attorney's fees, it is important to weigh the actual fees and costs unrebutted by the plaintiff against the potential of an award to chill future plaintiffs from filing legitimate actions. With these factors in mind, we order Standard to pay $5,040 in attorneys' fees to Eagle. It is so ordered.

---

4. We have reduced Eagle's fee request by $590. This amount represents the fees generated by Eagle's counsel in opposing Standard's threat to file an action for contribution against Eagle in state court. Standard's threat was made after this Court denied their motion to file the counterclaim. The Seventh Circuit has found it appropriate, in an analogous situation, to award attorneys' fees and the costs of appeal where a party "continued to litigate [an] appeal after it clearly became frivolous, unreasonable, and groundless." *Werch v. City of Berlin,* 673 F.2d 192, 196 (7th Cir.1982). While it is inappropriate to award fees for this activity in the instant case because it was outside the present suit, Standard's threat to file a state suit on one of the same issues covered by the denied counterclaim is further evidence of their vexatious and oppressive behavior.