**In the Matter of Oliver PLUNKETT, Monica Plunkett, Debtors.**

**Ralph C. ANZIVINO, Trustee, Plaintiff,**

v.

**COMMERCIAL SERVICES CORPORATION and Gene Sehrt, Defendants.**

**Bankruptcy No. 82–01119.
Adv. No. 84–0003.**

United States Bankruptcy Court,
D. Wisconsin.

Feb. 28, 1985.

Bruce Arnold, Whyte & Hirschboeck, Milwaukee, Wis., Attorney for Creditors' Committee.

William Steinmetz, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, Milwaukee, Wis., for trustee.

Gene Sehrt, pro se.

## MEMORANDUM DECISION AND ORDER

C.N. CLEVERT, Bankruptcy Judge.

The Official Unsecured Creditors' Committee and the Bankruptcy Trustee in the Chapter 11 case of Oliver and Monica Plunkett have filed a joint motion seeking costs and attorneys' fees against Gene Sehrt and Commercial Services Corporation as a result of the defendants' bad faith conduct in the above-captioned adversary proceeding. This matter was heard on May 10, 1984, and the following appearances were made: the official unsecured creditors' committee appeared by its counsel Bruce Arnold of the law firm of Whyte

& Hirschboeck; the trustee, Ralph Anzivino, appeared by his counsel, William Steinmetz, of the law firm of Reinhart, Boerner, Van Deuren, Norris & Rieselbach; and Gene Sehrt appeared pro se.

The question to be decided in this action is whether the defendants' Motion to Disqualify the Honorable Charles N. Clevert on the grounds of bias was brought or conducted in bad faith, vexatiously, or with the wanton intent to interfere with the administration of the bankruptcy case, as well as the above-captioned adversary proceeding, pursuant to 28 U.S.C. § 1927 and Bankruptcy Rule 9011.

## FACTS

On January 9, 1984, the above-captioned adversary proceeding was filed by the trustee seeking a determination that Gene Sehrt (Sehrt) and Commercial Services Corporation (Commercial) have no claim against the estate of Oliver and Monica Plunkett or Real Estate Resources, Inc. (RERI), based on certain purported contracts executed by Oliver Plunkett and Sehrt. In response to this complaint, Sehrt filed a motion entitled "Special Appearance Motion to Disqualify Judge and to Dismiss Adversary Proceeding." In this motion, Sehrt, on behalf of himself and Commercial Services requested "an out of district judge to hear the evidence for such removal and a jury of twelve to determine the facts reasonably create the appearance of bias to a reasonable man...." [sic] (Motion to Disqualify, February 9, 1984). In the supporting brief, Sehrt discussed issues pending on appeal in bankruptcy cases involving Plunkett, the legislative history of the Bankruptcy Reform Act of 1978, *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and accused two bankruptcy judges of favortism:

> The acts and decisions of bankruptcy judges Charles N. Clevert and James Shapiro, in matters involving Oliver

Plunkett are replete with acts unexplainable to this author by any rationale short of actual judicial favoritism to "bankruptcy ring" insiders for some potential influence or benefit to those granting the favortism in exchange for present economic gain to those receiving it. These acts include blatant disregard of the Rules of Bankruptcy, evidentiary facts, fraudulent assertions, Bankruptcy and substantive state law and equity, and the apparent intentional ignoring and thereby the sanctioning of repeated violations of both civil and criminal law by at least one trustee and the staff of the Clerk of the Bankruptcy Court, which collectively allow the trustee and attorneys employed by him to reap a huge economic harvest in collusion with him, without any ability of affected creditors or the debtor to monitor the misconduct, or stop it. (Memorandum Brief in Support of Defendants' Special Appearance)

On February 14, 1984, this court held a pretrial conference in the above-captioned adversary proceeding. During this conference, the court ordered Sehrt to file specific factual grounds to support his motion for recusal and to serve a copy of these on counsel for the trustee no later than 12:00 P.M. on February 20, 1984. (Pretrial Transcript 29, 30). The court then scheduled an evidentiary hearing for February 21, 1984, to consider Sehrt's written specifications for recusal. All other matters, including Sehrt's motion challenging the court's jurisdiction, were adjourned to that date. The court also gave Sehrt an opportunity to document his proof of claim pursuant to Bankruptcy Rule 3001(e)(1) and to obtain legal counsel for Commercial on or before the hearing date.[1]

The February 21st hearing was held as scheduled. Contrary to the court's directive, Sehrt failed to file specifications for recusal. He also failed to document his proof of claim or obtain counsel for Commercial. Instead, at the beginning of the

---

1. A corporation must appear by a licensed attorney. *See, In re Las Colinas Development Corp.*, 585 F.2d 7 (1st Cir.1978) and order dismissing appeal in *Falls Vending Service, Inc.* 83–C–1570 (Judge Warren, U.S. District Court E.D. Wis., decided September 19, 1983).

hearing, Sehrt asked for and was granted a recess "to consult with new counsel that has been obtained and to file some papers, papers requested by the Court." (Evidentiary Hearing Transcript, p. 3). Immediately thereafter, Sehrt returned to the courtroom without counsel for himself or Commercial Services and filed a motion for continuance. When asked to advise the court as to the absence of counsel, Sehrt began talking about the canons of ethics, the complexities of the Plunkett case, the difficulty of finding competent counsel, the jurisdiction of the court, and the alleged criminal conduct of the trustee, the attorneys and the court in this case.

In his affidavit in support of the motion for a continuance, Sehrt blamed the court for his failure to prepare for the recusal motion. He also stated in his affidavit that he was involved in

> at least 5 appeals and 3 post judgment motions and an adversary action and 5 and prospectively bankruptcy filings and at least 4 civil actions and certain criminal matters arising directly as a result of the actions of the Hon. Charles Clevert and his trustee and his and the creditor's committee attorneys improper and biased acts in the Plunkett and Resources cases, and the collaborative acts of others in concert with them.... (Affidavit attached to Motion for Continuance, 2/12/84).

He also continued to accuse the court of bias:

> The bias of the Hon. Charles Clevert in favor of the trustee and his and the creditor's committee counsel, and against affiant is clearly evident from a pattern of actions set forth in substantial detail in affidavits filed in other proceedings in the Plunkett and Resources cases, and the transcripts of the pretrial conference in the adversary action, which actions include the overloading with work which can not be completed within the time required, which includes the papers required in these two hearings on the adversary and the misconduct of the judge and trustee et al in the expenses proceed-

ing, two briefs due last Friday on appeals of biased Clevert decisions in favor of the trustee and his and creditor's committee attorneys, and the research and learning of the entire issues of law surrounding the bankruptcy, partnership and personal services contracts and constitutional subject matter jurisdiction issues within the inordinately short times required by Hon. Charles Clevert and the Rules of Bankruptcy or lose all rights. (Affidavit attached to Motion for Continuance, 2/21/84).

As the hearing continued, the court gave Sehrt additional opportunities to submit his written specifications for recusal or to explain his failure to do so:

> MR. SEHRT: Mr. Steinmentz also argues that our list of wrongs committed by the Honorable Charles Clevert and his trustee and his trustee's lawyers and the Creditors' Committee lawyers were due yesterday, and it's true and we tried to have them in yesterday, but unfortunately when we came, we found the door to the courthouse locked.
>
> THE COURT: Do you have your written specifications now, Mr. Sehrt?
>
> MR. SEHRT: No. As a matter of fact, the affidavit filed with the Motion of Continuance you will note indicates in paragraph 5 that all papers and records with respect to those matters and except for a few papers in this briefcase have been stolen, and so far while we have endeavored to determine the ability to recover them and to recover them, we have been unable to, and, in fact, I appeared here today in some rather casual clothing because even the clothing has been stolen. It's clearly a matter beyond our control, not of our doing or contemplation—
>
> THE COURT: Mr. Sehrt, you just suggested you came here yesterday to file papers and could not. Then you make reference to your affidavit which says papers were stolen on Saturday. Now, did you have the papers yesterday and, if so, where are they and if you do not have the papers today, I would like for you to

place on the record the specifications that formed the basis for your motion, and I am going to place you under oath for that purpose. (Evidentiary Hearing Transcript, pp. 12–13).

The court then placed Sehrt under oath. Nonetheless, Sehrt refused to support any of his allegations with specific facts:

MR. SEHRT: As I have explained to Your Honor, I am without records with which to be able to flush out facts and to recall the numerous situations. It is my reflection that there are some 75 different instances that we have records of and files on that we believe constitute improper conduct by this Court. It was my statement previously that in light of the circumstances the best I could do at this time is to provide the basis as set forth in these affidavit. I have not paraphrased or quoted these affidavits. I have attempted to flush them out with facts. It is my judgment that the best interest of the judiciary somewhat less than enthusiastically praised by the citizenry of this nation as noted recently by Chief Justice Warren Burger require the disqualification of a judge when even the appearance of bias to a reasonable man is present. IBM held that. It is clear in this matter that there is more than the appearance of bias.

At this point, Your Honor and I are at sore points in both criminal and soon to be civil matters in which I personally am asking for you to be charged criminally and in which your decision with respect to even the jurisdiction to adjudicate whether you have jurisdiction is fraught with personal consequences. You are clearly not in a position to adjudicate anything, and without jurisdiction whatever you rule is void. (Evidentiary Hearing Transcript, pp. 21–22).

As a result, the court denied both the motion for recusal and motion for a continuance, finding that there was "nothing in any of the documents or statements that warrant[ed] even two seconds worth of consideration for disqualification." (Evidentiary Hearing Transcript, pp. 22–23). It was the court's opinion that Mr. Sehrt "cost creditors by bringing a frivolous motion." (Evidentiary Hearing Transcript, p. 23). Sehrt's motion to dismiss the original complaint for lack of subject matter jurisdiction was also denied. The court directed that an answer to the complaint be filed on or before 12:00 p.m., March 12, 1984.

On March 7, 1984, default judgment was entered against Commercial because of its failure to formally appear by an attorney and file an answer. Thereafter, a hearing was scheduled for April 12, 1984, to consider plaintiffs' motion for default judgment against Sehrt because of his failure to file an answer before the March 12th deadline. On March 23, 1984, Sehrt filed an affidavit claiming that he was never served with a copy of a summons or complaint in this adversary proceeding. The hearing on default was held on April 12, 1984, and Sehrt failed to appear in person or by counsel. Consequently, default judgment was entered against Sehrt.

The trustee and the creditors' committee then filed this joint motion seeking costs and attorneys' fees ($3,107.50 for counsel for the trustee and $4,610.25 for counsel for the creditors' committee) as compensation for their time defending Mr. Sehrt's allegedly frivolous motion to disqualify this court. The motion is grounded upon 28 U.S.C. § 1927,[2] Bankruptcy Rule 9011,[3] and

---

**2.** § 1927. Counsel's liability for excessive costs.

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

**3.** Rule 9011 SIGNING AND VERIFICATION OF PAPERS

(a) Signature. Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney, except a list, schedule, statement of financial affairs, statement of executory contracts, Chapter 13 Statement, or amendments thereto, shall be signed by at least one attorney of record in his individual name, whose office address and telephone number shall be stated.

the general equitable powers of the court codified in 11 U.S.C. § 105 [4] and 28 U.S.C. § 1651.[5]

## DISCUSSION

■ The general rule (or "American Rule") regarding the payment of attorneys' fees is that each litigant must pay his own attorneys' fees. *Aleyska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). The rationale behind this rule is that the court does not want to penalize an individual who institutes an action to vindicate his rights or defends an action brought against him by requiring him to pay the prevailing party's attorney's fees. *McCandless v. Great Atlantic and Pacific Tea Co., Inc.*, 697 F.2d 198, 200 (7th Cir.1983). However, over the years Congress has recognized that in some instances an award of attorneys' fees is necessary and as a result has developed a number of exceptions to the "American Rule".[6] One of these excep-

tions enables a federal court, pursuant to its general equitable powers, to award attorneys' fees "when the losing party has 'acted in bad faith, vexatiously, wantonly or for oppressive reasons'...."[7] *Aleyska*, 421 U.S. at 258, 95 S.Ct. at 1622. The primary purpose behind awarding attorneys' fees when a party has acted in bad faith is to punish and deter frivolous lawsuits. *McCandless*, 697 F.2d at 202. This bad faith exception is applicable not only to litigation brought in bad faith but also to litigation conducted in bad faith. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980).

■ Several general principles apply when a court considers awarding attorneys' fees for bad faith. First, granting attorneys' fees is within the sound discretion of the trial court. *Gieringer v. Silverman*, 731 F.2d 1272, 1281 (7th Cir.1984). Second, the taxing of counsel fees is considered a punitive measure and, therefore,

A party who is not represented by an attorney shall sign all papers and state his address and telephone number. The signature of an attorney or a party constitutes a certificate by him that he has read the document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harrass, to cause delay, or to increase the cost of litigation. If a document is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the person whose signature is required. If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

(b) Verification. Except as otherwise specifically provided by these rules, papers filed in a case under the Code need not be verified. Whenever verification is required by these rules, an unsworn declaration as provided in 28 U.S.C. § 1746 satisfies the requirement of verification.

(c) Copies of Signed or Verified papers. When these rules require copies of a signed or verified paper, it shall suffice if the original is

signed or verified and the copies are conformed to the original.

4. § 105 Power of court.

(a) The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

(b) Notwithstanding subsection (a) of this section, a bankruptcy court may not appoint a receiver in a case under this title.

5. § 1651 Writs

(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

(b) An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction. June 25, 1948, c. 646, 62 Stat. 944; May 24, 1949, c. 139, § 90, 63 Stat. 102.

6. Other exceptions to the American Rule include the common fund and private attorney general exceptions. *See, Aleyska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258, 263, 95 S.Ct. 1612, 1624, 44 L.Ed.2d 141 (1975).

7. The distinction between winning and losing does not seem to apply to motions brought pursuant to 28 U.S.C. § 1927. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 762, 766, 100 S.Ct. 2455, 2462, 2464, 65 L.Ed.2d 488 (1980).

should not be considered lightly or employed without notice and an opportunity for a hearing. *Roadway Express*, 447 U.S. at 767, 100 S.Ct. at 2464. To the extent that the use of this sanction is for punitive or deterrent purposes, the amount of the fee is not necessarily determined solely on the actual amount of time expended by counsel. In *Textor v. Board of Regents of Northern Illinois University*, 711 F.2d 1387, 1396 (7th Cir.1983), the 7th Circuit reasoned that

> [T]he primary purpose of an award against counsel is to punish, *McCandless v. Great Atlantic and Pacific Tea Co.*, 697 F.2d 198, 202 (7th Cir.1983), and, we hope, deter counsel from undertaking frivolous lawsuits. As with fee awards entered against a party guilty of bad faith litigation, an award against counsel serves only incidentally to compensate the prevailing party for fees that should never have been incurred. *Id.* at 200; *Copeland v. Martinez*, 603 F.2d 981, 984 (D.C.Cir.1979), *cert. denied*, 444 U.S. 1044, 100 S.Ct. 730, 62 L.Ed.2d 729 (1980). Thus, a prevailing party's decision as to how to engage counsel should have no bearing upon the court's decision to punish malfeasant counsel. The amount of fees actually incurred by the wronged party is a rational starting point for determining the size of the award, but it is no more than a guidepost.

█ Finally, the power to assess attorneys' fees should not be exercised unless the litigant has acted in "subjective bad faith" and the claim or motion lacks a "plausible legal or factual basis." *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 227 (7th Cir.1984); *McCandless*, 697 F.2d at 200. Although a finding of malice is not required in order to award attorneys' fees, courts usually find either implicitly or explicitly that there has been intentional misconduct. *Knorr Brake Corp.*, 738 F.2d at 227. In finding misconduct, the court need not rely on direct evidence. Intent may be

inferred from the meritlessness of the action itself. *Suslick v. Rothschild Securities Corp.*, 741 F.2d 1000, 1006 (7th Cir. 1984); *Knorr Brake Corp.*, 738 F.2d at 227. However, bad faith should not be assumed from the fact that the suit was unsuccessful. If some sort of plausible basis existed for the lawsuit, then attorneys' fees should not be allowed. *Knorr Brake Corp.*, 738 F.2d at 227. A plausible basis for the claim exists if

> [I]t has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim. The question is whether a reasonable attorney could have concluded that facts supporting the claim *might be established*, not whether such facts actually *had been established*. (Emphasis in Original) *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir.1980)

In *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1088 (2d Cir.1977), the second circuit held that in order to find bad faith there must be "clear evidence" that the claims are "entirely without color and made for reasons of harassment or delay or for other improper purposes."

█ It is fairly well settled that attorneys' fees may be assessed against a party as well as an attorney.[8] It is also clear that the power to award attorneys' fees should be invoked *"only* in instances of a *serious and studied disregard for the orderly process of justice."* (Emphasis in original) *Overnite Transportation Co. v. Chicago Industrial Tire Co.*, 697 F.2d 789, 795 (7th Cir.1983).

Examples of such abuse of the system were faced by the courts in *McCandless* and in *Wickstrom v. Ebert*, 585 F.Supp. 924 (E.D.Wis.1984). In *McCandless*, the court of appeals affirmed a district court finding of bad faith. The district court based its finding on the following factors:

---

**8.** *See, McCandless*, 697 F.2d at 201, where the Seventh Circuit Court of Appeals raised but did not answer the question as to whether an attorney should be held to a less stringent standard of bad faith than a party. *But see, Suslick v. Rothschild*, 741 F.2d 1000, 1006 (7th Cir.1984) where the Seventh Circuit Court of Appeals held that 28 U.S.C. § 1927 applies to attorneys only.

(1) the obvious meritlessness of the section 301 [Labor Management Relations Act of 1947 (29 U.S.C. § 185)] claim; (2) the failure to provide any factual or legal support for the sundry constitutional claims; (3) counsel's omission of a key sentence from a quotation; and (4) the failure to respond to defendant's motion for fees and costs. *McCandless*, 697 F.2d at 201.

In addition to these factors, the court also considered the admission of counsel that although he filed the claim at his client's insistence he was aware of the absence of merit to the case at the time of filing.

In *Wickstrom*, the pro se plaintiffs sued various officials for alleged constitutional violations which related to state criminal prosecutions against them under Wis.Stat. § 946.69(1).[9] Within weeks of the commencement of their lawsuit, the plaintiffs served the summons and complaint on parties who were no way involved in the criminal prosecution, such as deputy clerks for the Eastern District of Wisconsin, the two attorneys representing the defendants in the case, employees of the Wisconsin Department of Revenue, and a state circuit court judge. The plaintiffs then filed papers with the court threatening the court with civil prosecution. These papers, entitled "Notice and Demand/Caveat" alleged "that the court acted outside of its jurisdiction when it 'became a felon and a trader [sic] to the People of the United States ...'." In its opinion awarding attorneys' fees, the court summed up the problems caused by vexatious lawsuits:

All too frequently, the courts of this district—and others throughout the country—are forced to expend their time and resources administering cases in which there is little, if any, basis for relief. Typically, such actions are filed in ignorance of the nature and scope of those remedies available to civil litigants under federal law.

Occasionally, as in this case, ignorance is combined with malice in a suit which, by its very nature, commands the immediate and uninterrupted attention of the Court. The result is that other non-frivolous actions, technically on equal footing with vexatious suits, are not afforded the considered attention they merit, and justice is not done. That individuals like the present plaintiffs are able to so pervert the processes of our judicial system should be a source of great concern among all thinking people, both within and without the legal profession.

While this Court alone cannot remedy what has become a problem for courts across the nation, it can and will exercise its discretion in this case to sanction plaintiffs for the vexatious nature of their suit and the oppressive manner in which they have prosecuted it. In this undertaking, the Court follows a growing trend among the district courts in favor of awarding prevailing defendants the expenses they have incurred in the course of malicious litigation. *Wickstrom*, 585 F.Supp. at 938.

█ It is the opinion of this court that ground for recusal never existed and that Sehrt knew that the motion was groundless. It is not apparent whether the motion to disqualify was interposed to harass counsel and this court or to delay proceedings, but both purposes have been effectuated by Sehrt's baseless accusations. There is little doubt that the motion was filed and prosecuted in bad faith. Sehrt repeatedly declined to provide the court with any factual or legal basis for recusal, see, *McCandless*, 697 F.2d at 202, and like the plaintiffs in *Wickstrom*, Sehrt has filed a flood of papers in an attempt to involve as many people as possible in the alleged "conspiracy". As a result, substantial resources have been expended by the attorneys involved and by the court simply in its attempt to conclusively resolve the motion.

In making this decision, the court should point out that Sehrt and Commercial Services Corporation are not strangers to this court. On December 16, 1983, Mr. Sehrt

---

9. WIS.STAT. § 946.69(1) makes it unlawful for one not a public officer or employee to assume to act in an official capacity.

filed a letter with the Bankruptcy Court, which was docketed as follows: "Letter to Clerk re Commercial Services Company being a party in interest to cases 82–01119 [Oliver and Monica Plunkett], 82–01120 [Real Estate Resources, Inc.], 82–02497 [East Town Properties], and 83–04432 [National Investment Properties, Inc.]." All of these cases involve property owned by Plunkett or Plunkett related entities. In fact, Sehrt and Commercial Services have participated actively in various Plunkett related proceedings.

Court records reveal that Commercial Services and/or Sehrt have (a) acted as petitioning creditors in involuntary proceedings against at least three Plunkett related partnerships [1029 Company (83–00557); National Investment Properties, Inc. (83–04432); and East Town Properties (82–02497)]; (b) intervened in motions for relief from the automatic stay; (c) filed objections to conveyance of partnership interests; (d) filed objections to applications for interim compensation; and (e) filed motions to remove the trustee, trustee's attorney, and attorney for the creditors' committee. In addition, the motion before the court is not the only motion for recusal filed by Sehrt in Plunkett related cases. (*See, In re Oliver and Monica Plunkett*, 82–02229 and *Real Estate Resources*, 82–01120, Motion for Reconsideration and for Findings of Fact and Conclusions of Law, and For Disqualification of Judge, 2/21/84; and *In re East Town Properties*, 82–02497 [*Joseph J. Zilber Town Realty, Inc. v. East Town Properties*, 82–0978] Notice of Motion to Have Bankruptcy Judge Recuse Himself, 12/12/82).

Sehrt is, as many of his briefs and affidavits will reveal, more than an ordinary pro se creditor who finds himself or herself in a complex Chapter 11 case with no idea how to exercise his rights. In fact, Sehrt is aware of the nature of Chapter 11 proceedings as well as the impact of his various

motions and objections on those proceedings.

The court is cognizant that the recusal motion was joined with a motion to dismiss for lack of subject matter jurisdiction. Although the motion to dismiss was grounded upon sound legal principles and hence does not give rise to sanctions,[10] that does not preclude a finding that the recusal motion was filed in bad faith. *See, Cinciarelli v. Reagan*, 729 F.2d 801 (D.C.Cir.1984).

Based upon the foregoing, the court's finding that the trustee and Creditors' Committee incurred reasonable and necessary costs and attorneys' fees defending the recusal motion filed by Sehrt in this case. Accordingly, it is

ORDERED, pursuant to Bankruptcy Rule 9011 and 11 U.S.C. § 105, that judgment be entered against Gene Sehrt[11] as prayed by the trustee and Creditors' Committee.

---

**10.** This issue has been decided by the 7th Circuit Court of Appeals, in *Moody v. Amoco Oil Co.,* 734 F.2d 1200 (7th Cir.1984). The court held that the bankruptcy courts could validly exercise jurisdiction over bankruptcy cases and matters pursuant to the Emergency Rule.

**11.** Commercial Services Corporation's failure to obtain an attorney prevents an award of attorneys' fees against it because the corporation never formally appeared in the above-captioned action.