**McINTYRE'S MINI COMPUTER SALES GROUP, INC., Plaintiff,**

v.

**CREATIVE SYNERGY CORPORATION, et al., Defendants.**

**No. 86CV70620DT.**

United States District Court,
E.D. Michigan, S.D.

Aug. 13, 1986.

---

## MEMORANDUM OPINION AND ORDER

PHILIP PRATT, Chief Judge.

On Motions for Sanctions and Discovery

This is an action arising out of the alleged theft of trade secrets from the plaintiff by some of the defendants which were then sold to other defendants. The plaintiff filed a multiple-count complaint, charging violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and of Michigan common law.

McIntyre's Mini Computer, the plaintiff, is a distributor of used computer equipment. It maintains a list of accounts, potential customers and other information in a computer program. In November of 1984, plaintiff sought the advice of defendant Creative Synergy, a software consulting firm, regarding possible modifications of its systems. It is alleged that Creative Synergy, through its employees, defendants Michael Van Brocklin, Kevin Stewart, Gerry Manning and Geoffrey Chalmers, stole the plaintiff's confidential customer list in the process of doing work for the plaintiff. Plaintiff claims that the purloined list was then sold to the remaining defendants, Hanson Data Systems ("Hanson"), Delta Computech, Inc. ("Delta"), Computer Repaid Center ("CRC") and Newman Computer Exchange ("Newman").

Six of the eight counts of this complaint allege RICO violations. The defendants are in each count alleged to have violated both the substantive provisions of RICO, 18 U.S.C. § 1962(c), and to have conspired to violate RICO, 18 U.S.C. § 1962(d). Creative Synergy and its employees are named in each count. Delta is named in Count 2, Hanson in Count 3, CRC in Count 4, CRC and Newman in Count 5, and all defendants are named in Count 6. In addition, all the defendants are charged with the misappropriation of trade secrets (Count 7) and fraud (Count 8).

This complaint was filed on February 20, 1986, along with a motion for preliminary injunction as to the trade secret issues only. The preliminary injunction motion was denied on March 7, 1986. On April 7, the plaintiff voluntarily dismissed defendant Newman from the case. After the filing of several motions, this court ordered a partial judgment on July 30, 1986, dismissing Counts 1–6 as to all defendants and dismissing Count 8 in favor of Hanson, Delta and CRC. Count 7, alleging violations of trade secret law, survived the motions to dismiss unscathed. Before the court now is former defendant Newman's motion for sanctions pursuant to Fed.R. Civ.P. 11 and 28 U.S.C. § 1927.[1]

Fed.R.Civ.P. 11 provides in pertinent part:

Every pleading, motion and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name.... The signature of an attorney or party constitutes a certificate by him that he had read the pleading, motion or other paper; and to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses in-

---

1. The court will consider Rule 11 sanctions only. Sanctions under section 1927 may be imposed only on a showing of an attorney's recklessness or bad faith, of which there is no evidence in this case. See, Estate of Blas Through Chargualaf v. Winkler, 792 F.2d 858 (9th Cir.1986); Zaldivar v. City of Los Angeles, 780 F.2d 823 (9th Cir.1986).

curred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Rule 11 was amended in 1983 to eliminate the requirement that there be a showing of subjective bad faith, and the standard now applicable is an objective one: whether the position advanced by a party was supported by a reasonable inquiry into the applicable law and relevant facts.[2] The reason for the shift to the more stringent standard was made clear by the Notes of the Advisory Committee.

> Experience shows that in practice Rule 11 has not been effective in deterring abuses.... The new language is intended to reduce the reluctance of courts to impose sanctions ... by emphasizing the responsibilities of the attorney and reenforcing those obligations by the imposition of sanctions ... The new language stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule. The standard is one of reasonableness under the circumstances.... This standard is more stringent than the original good-faith formula and thus it is expected that a greater range of circumstances will trigger its violation.

The Committee did inject a cautionary note:
> The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual and legal theories. The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted. Thus, what constitutes a reasonable inquiry may depend on such facts as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts ... or was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar.

As one court has said:
> In framing this standard, we do not intend to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law. Vital changes have been wrought by those members of the bar who have dared to challenge the received wisdom, and a rule that penalized such innovation and industry would run counter to our notions of the common law itself. Courts must strive to avoid the wisdom of hindsight in determining whether a pleading was valid when signed, and any and all doubts must be resolved in favor of the signer. But where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands, Rule 11 has been violated.

*Eastway Const. Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985). Mere lack of success on the merits cannot alone justify sanctions. *McCandless v. Great Atlantic and Pacific Tea Co.,* 697 F.2d 198 (7th Cir.1983); *Victory Beauty Supply v. Lus-Ter-Oil Beauty Products,* 562 F.Supp. 786 (N.D.Ill.1983).

■ While it is clear that sanctions should not be lightly imposed, given the impact they may have on both the attorney's and party's reputations, *Gilmer v. City of Cleveland,* 617 F.Supp. 985 (N.D. Ohio, 1985), it is equally clear that the amended Rule 11 *requires* that sanctions be imposed where the court finds that a party's or attorney's conduct was improper or unreasonable. *Westmoreland v. CBS, Inc.,* 770 F.2d 1168 (D.C.Cir.1985). Nor may an attorney evade her duty to make a reasonable inquiry into the operative facts and relevant law before signing her name to a pleading by claiming that duty to the client comes first. As a court of this district recently said:

> Notwithstanding counsel's duty to zealously represent his client, an attorney is also obligated to refrain from raising claims without first conducting reasonable inquiry into the underlying facts and law on which those claims are predicated. Counsel has a duty to his client, and he has a duty to the fair administration of

---

**2.** For a thorough analysis of the differences between the old and amended versions of Rule 11, *see,* Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181 (1985).

justice as well.... An attorney is obligated to dissuade his client from pursuing specious claims, and thereby avoid possible sanctions by the court, as well as unnecessary costs of litigating a worthless claim.

*Mohammed v. Union Carbide Corp.*, 606 F.Supp. 252, 261 (E.D.Mich.1985); *see, Blair v. Shenandoah Women's Center*, 757 F.2d 1435, 1438 (4th Cir.1985). While a finding of a violation of Rule 11 requires the imposition of sanctions, the selection of the type of sanction lies within the discretion of the court, ranging from a reprimand to a paying of attorney's fees. *Westmoreland, supra*, (2d Cir., 1985). Further, even if the court decides to assess attorney's fees, the prevailing party is not automatically entitled to full reimbursement of all its expenses, and the equities of the situation must be considered to balance the goal of deterring baseless litigation with that of avoiding financially ruining parties or attorneys. *Mohammed, supra.*

▇ The court finds that the plaintiff did conduct a reasonable pre-filing inquiry which produced facts allowing the reasonable inference that Newman engaged in misconduct. Upon discovering the theft of its data base in December of 1985, the plaintiff immediately hired a private investigator. This investigator interviewed those who were believed to have stolen the material, along with employees of all the companies who were known to have purchased the data base. An employee of Newman was interviewed, and it was admitted that a portion of the data base had been purchased, but that she did not know that it was stolen. As a result of this investigation, Newman agreed not to use any of the allegedly stolen list. Given the crucial nature of the information at issue, and the obvious need to move quickly to protect its business, it was not unreasonable for the plaintiff to infer that Newman was in possession of trade secrets and that it might have known these were stolen.

Newman misunderstands Rule 11 when it focuses on whether the plaintiff had conclusive evidence that would satisfy every element of the causes of action alleged in the complaint. The rule requires only a

reasonable inquiry that a complaint is well-grounded in fact, and does not impose the impossible burden on plaintiffs of having to have sufficient evidence at the complaint stage to survive a motion for summary judgment or directed verdict, before formal discovery has even begun. Here, the plaintiff's investigation revealed that customer lists had been stolen and that some of the information had been purchased by Newman. The plaintiff could not have been expected to have in its possession evidence that Newman knew the material was stolen before filing the complaint, as such "state of mind" evidence is difficult enough to obtain even through formal discovery procedures.[3]

Newman also makes an *ex parte* request for further discovery to support its motion for sanctions in the event the court does not believe sanctions are warranted. The Advisory Committee cautioned against allowing sanctions proceedings to expand into full-blown litigation:

To assure that the efficiencies achieved through more effective operation of the pleading regimen will not be offset by the cost of satellite litigation over the imposition of sanctions, the court must to the extent possible limit the scope of sanctions proceedings to the record. Thus, discovery should be conducted only by leave of the court, and then only in extraordinary circumstances.

In a case involving litigation over fees in a civil rights case, one justice of the Supreme Court noted that such disputes "must be the least socially productive types of litigation imaginable." *Hensley v. Eckerhart*, 461 U.S. 424 at 442, 103 S.Ct. 1933 at 1944, 76 L.Ed.2d 40 (1983) (Brennan, J., concurring in part and dissenting in part). There are no extraordinary circumstances warranting further discovery on the issue of sanctions in this case.

The court notes in passing that Newman's attorneys claim almost $17,000.00 in attorneys' fees for a case in which their client was dismissed after six weeks and that counsel claims was frivolous from the outset. Over 35 hours for a total of over $3,000 are said to have been spent drafting

---

**3.** When the court denied the plaintiff's motion for preliminary injunction, it was careful to avoid commenting on the merits of the case and

emphasized the need for further discovery before a substantive ruling would be possible.

a set of interrogatories. Over 100 hours, totalling $9,600.00, were spent responding to the plaintiff's preliminary injunction motion on the trade secret issue, in which the response of Newman analyzed seven cases. While it is not normally the practice of this court to comment on issues not necessary to the decision, the magnitude of the fees claimed by counsel for Newman is astounding, and leads the court to remind counsel that Rule 11 permits an award only of reasonable fees.

In conclusion, the court finds that the plaintiff did conduct a reasonable inquiry before filing this case, and that it was not unreasonable for the plaintiff to include Newman in this suit. Accordingly, defendant Newman's motions for sanctions and for discovery are DENIED.

IT IS SO ORDERED.