**In re DAILY MEDICAL EQUIPMENT, INC., Debtor.**

**Bankruptcy No. 690–01464.**

United States Bankruptcy Court, N.D. Ohio.

Aug. 14, 1992.

Donald M. Miller, Canton, OH, for James R. Kandel, Trustee.

Joel K. Dayton, Black, McCuskey, Souers & Arbaugh, Canton, OH, for debtor.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Chief Judge.

In this case, converted from Chapter 11 to Chapter 7, final applications for compensation were submitted by the Chapter 7 Trustee, James R. Kandel, Esq. (Trustee) and his counsel, Donald M. Miller, Esq. (Counsel). Because the estate funds are insufficient to pay the amounts requested, the Trustee and Counsel filed a motion to determine the amounts of these administrative claims and for an order that the allowed claims be charged to Ameritrust Company (the Bank), a perfected first lienholder on the estate assets, pursuant to 11 U.S.C. § 506(c). The Bank filed an objection to the amounts requested. A hearing was held July 16, 1992 and the matter was taken under advisement.

The court has jurisdiction in this matter by virtue of 28 U.S.C. § 1334(b) and General Order No. 84 entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B). This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052.

## FACTS

This bankruptcy case was originally filed under Chapter 11 of Title 11 of the United States Code on July 18, 1990. The Bank filed a conversion motion on July 26, 1990, based on an alleged lack of good faith and inability to reorganize. The motion was

heard August 27, 1990. The court issued its written opinion and order granting the conversion to Chapter 7 on September 5, 1990. The Trustee was appointed that same day. Counsel's employment was approved September 25, 1990.

To facilitate liquidation of the estate, the Trustee sold the debtor's patient list and service rights to Tri–County Oxygen, Inc. (Tri–County), which continued to provide oxygen and other medical supplies to debtor's patients. Tri–County was also appointed collection agent to collect outstanding accounts receivable in return for a percentage payment from each account collected. Tri–County purchased debtor's office equipment at private sale. Upon court approval, several distributions from collected accounts receivable were made to the Bank, which held a perfected security interest in the cash collateral. The Trustee and Counsel were involved in disposing of various leasehold interests and resolving motions for relief from the automatic stay, and performed a variety of administrative tasks.

At the conclusion of the case, Counsel requested compensation in the amount of $6,118.00 and $208.90 in reimbursement of expenses. The Trustee requested $5,303.77 in commissions under 11 U.S.C. § 326 and expense reimbursement of $100.00. There remains $7,703.94 in the Trustee's account to be disbursed pursuant to this court's order.

## DISCUSSION

The initial issue is whether the fees requested may be properly recovered from the Bank if the funds remaining in the estate are insufficient to pay these administrative claims in full. 11 U.S.C. § 506(c) states:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

The Bank argues that it cannot be forced to make up any shortfall between the amounts sought and the funds the Trustee has on hand, because such fees may only be recovered from property of the estate. The periodic payments made by the Trustee to the Bank converted the funds collected for the Bank's benefit from property of the estate to property of the Bank. Consequently, the argument goes, once payment was made by the Trustee, those funds were removed from the bankruptcy realm entirely and could in no way be recovered for payment of administrative expense claims.

The Bank cites no case law in support of its argument, but assumes that "property," as the term is used in Section 506(c), equates to "property of the estate."

Nowhere in the definitional section of the Code, 11 U.S.C. § 101, or elsewhere is this assumption validated. The drafters of the Code have consistently used the entire phrase "property of the estate" in various provisions directly applicable. For example, the automatic stay protection of 11 U.S.C. § 362(a) applies not to "property" but "property of the estate." 11 U.S.C. § 363(b) governs the use, sale or lease of "property of the estate."

At least two courts have indicated that an administrative expense claim may be recoverable even if the property involved is no longer part of the estate. One court referenced the legislative history, which stated that a recovery under Section 506(c) could be had from the property securing the claim or the secured party itself. *In re Central Foundry Co.*, 45 B.R. 395, 404 (Bankr.N.D.Ala.1984). A more recent opinion noted the precise language of Section 506(c) in countering an argument similar to that of the Bank:

> Section 506(c) contains a unique feature among the bankruptcy provisions: a focus not on the property of the bankruptcy estate, or on property to which the estate is entitled, but rather on property securing "allowed secured claims." A claim for the expenses of preserving or disposing of such property chases that property—and perhaps even the secured creditor—until the claim is satisfied.

*In re Radco Merchandising Servs., Inc.*, 111 B.R. 684, 687 (N.D.Ill.1990).

To accept the Bank's argument is to penalize the Trustee and Counsel for their cooperation with the Bank. Under the Bank's theory, the Trustee and Counsel would have been better assured of their compensation as an administrative expense under Section 506(c) if they had retained the funds collected until the case was concluded, deducted their fees and expenses, and then turned the remaining balance over to the Bank. The Trustee's action in making periodic payments is of benefit to the Bank, as it was able to put the funds received to use at an earlier date. The court finds that the Trustee and Counsel may recover from the Bank any funds necessary to pay their administrative claims as allowed by the court. The court must now review the Bank's objection to those claims to determine their amount.

■ For the Bank to be charged with fees and expenses under Section 506(c), the Trustee and Counsel must prove three elements:

1. The cost was reasonable;
2. The cost was necessary in preserving or disposing of the collateral; and
3. The Bank benefited from the cost.

*In re Evanston Beauty Supply, Inc.*, 136 B.R. 171 (Bankr.N.D.Ill.1992); *In re Cascade Hydraulics & Utility Serv., Inc.*, 815 F.2d 546 (9th Cir.1987). The benefit element is primary in importance as well as the most difficult to prove.

Proof of direct benefit is required. The party seeking to recover administrative costs and expenses must show that the secured creditor received a quantifiable (not qualitative or generalized) benefit. *Evanston*, 136 B.R. at 176 (citations omitted).

■ The Bank's initial objection is that several of Counsel's billings are excessive and therefore unreasonable. On several occasions, Counsel charged over one hour's time to prepare a one page motion and proposed order in which only minimal revisions were made each time. The court agrees that this is excessive and therefore unreasonable, and will reduce these charges to one/third of their total. Counsel asserts for these services 15.1 hours at $95.00 per hour, or $1,434.50. The reduction is $956.33.

■ The Bank next attacks certain fees requested by Counsel for services which should have been performed by the Trustee as part of his statutory duties pursuant to 11 U.S.C. § 704. This court has previously examined the "persistent blurring of the lines of responsibility between trustees and the professionals they hire" in *In re Butterbaugh*, 135 B.R. 507 (Bankr.N.D.Ohio 1991). The court held that duties involving the sale of assets, routine correspondence and phone calls, tax and insurance payments concerning estate property and other matters which do not require the specific expertise of a lawyer were more properly included in the trustee's compensation, not that of his counsel. *Id.* Upon review, the court finds that 5.85 hours of Counsel's time entries relate to services which should have been performed by the Trustee. At $95.00 per hour, this reduction totals $555.75. Because the court has deducted this amount from Counsel's request, it will not reduce the Trustee's requested commission of $5,403.77. Any duplication of effort has been addressed by the reduction in Counsel's fees.

■ The Bank's final objection is that certain fees and expenses produced no direct and primary benefit to the Bank, but instead, only a generalized benefit to the estate. The charges in this category include the rejection of an equipment lease and various tasks concerning payroll and W–2 forms for the Debtor's employees. The court agrees that 4.25 hours of Counsel's time were spent on tasks which did not directly benefit the Bank, resulting in a reduction of $403.75.

The total reduction in Counsel's fees is $1,915.83. Counsel's application for compensation will be approved in the amount of $4,202.17 in fees and $208.90 in expenses. The Trustee's application for compensation will be approved in the amount of $5,303.77 in fees and $100.00 in expenses.

The court has estimated court costs at $293.50, including a $150.00 claim of the

United States Trustee and the expense of mailing final meeting notices. This leaves the balance of estate funds at $7,410.44 to be paid over to the Trustee and Counsel. As their compensation and expense awards total $9,814.84, the Bank shall contribute $2,404.40 to the estate for payment of these administrative claims pursuant to 11 U.S.C. § 506(c).