**In re 680 FIFTH AVENUE ASSOCIATES, Debtor.**

**Bankruptcy No. 92–44734.**

United States Bankruptcy Court, S.D. New York.

April 28, 1993.

Proskauer Rose Goetz & Mendelsohn by Jeffrey Levitan, New York City, to the debtor and debtor-in-possession.

Cadwalader Wickersham & Taft by Edwin David Robertson, New York City, for Mutual Ben. Life Ins. Co. in Rehabilitation, Successor to Mut. Ben. Life Ins. Co.

Berlack Israels & Liberman by Steven Greenbaum and Robert Miller, New York City, for the Official Committee of Unsecured Creditors.

**CORRECTED TEXT OF BENCH RULING DELIVERED ON FEBRUARY 22, 1993 ON MOTION TO PAY PROFESSIONALS' FEES PURSUANT TO EQUITIES EXCEPTION OF SECTION 552(B)**

TINA L. BROZMAN, Bankruptcy Judge.

Today's dispute, in this most contentious of cases, is illustrative of the problems a debtor-in-possession faces when its relationship with a secured creditor sours and it has no other source of funds from which to compensate professionals. Here, the debtors seek authority to pay, at some point in the future, subject, of course, to applications for compensation, the professional fees of Proskauer Rose Goetz & Mendelsohn ("Proskauer"), counsel to the debtors, and Berlack, Israels and Liberman ("Berlack"), counsel to the Official Committee of Unsecured Creditors, out of rents and income from the debtors' property. Mutual Benefit Life Insurance Co. ("Mutual"), the mortgagee, objects. With the consent of the debtors and the committee, Mutual is assumed for the purposes of this motion only to be the holder of a valid, perfected interest in these rents and income.

**BACKGROUND**

54th and Fifth Land Partners owns real property in Manhattan which it leases to 680 Fifth Avenue Associates, which in turn owns and operates a 27 story office building on the premises. On August 21, 1992, the debtors filed with this Court their respective voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Pursuant to Sections 1107 and 1108 of the Code, the debtors continue to operate their businesses and manage their properties as debtors-in-possession.

This case has been saddled since its inception with what seems like continuous disputes. Aside from the drawn-out Proskauer retention battle, the numerous discovery disputes and the battle fought over whether the state-court receiver ought be ousted, the debtors and Mutual have consistently bickered with respect to the debtors' use of their rents and income constituting Mutual's cash collateral. On August 21, 1992, Judge Garrity, in my absence, after what I understand to have been a highly-charged preliminary hearing, signed a narrowly-tailored preliminary order authorizing the debtors' use of these post-petition rents and income. I thereafter signed several supplemental orders which granted the debtors limited use of their rents and accounts receivables pending this final hearing. Disputes over the use of rents have been raised with respect to amounts as low as approximately $100. At the last interim cash collateral hearing, the debtors sought authority to pay professional fees out of their rents and income. Mutual vigorously objected. The debtors argued, with the support of counsel for the Committee, that the "equities" of this case dictate that the rents and income the debtors receive should be exempted from attachment of Mutual's security interest pursuant to the "equities" exception contained in section 552(b) of the Bankruptcy Code.

This exception is warranted, the debtors say, because they have no other source of funds with which to pay counsel, all of their assets being encumbered, and because Mutual has already benefited by receiving approximately $18 million on the sale of the property to the debtors and in prepayment of interest. *See Debtor's Memorandum of Law in Support of Application* at 13.

Mutual disputes the applicability of section 552(b), asserting that what the debtors really are attempting to do is use Mutual's cash collateral to compensate professionals, pursuant to Code section 506(c). Mutual then posits that the debtors cannot meet the section 506(c) burden of demonstrating that the fees sought are reasonable, necessary for the preservation of Mutual's lien, and incurred primarily for Mutual's benefit.

At the January 28, 1993 hearing on this matter, both sides made concessions. The Committee admitted that there are no reported cases in which a court has utilized section 552(b)'s equities exception to pay attorneys' fees. Mutual conceded that the hypothetical list found in the *Collier* trea-

tise of circumstances warranting application of the equities exception is not an exclusive list, and while I may choose not to exercise that discretion, the Code vests me with the authority to do that which the debtors have requested.

## DISCUSSION

■ As the Second Circuit recently noted in *In re Vienna Park Properties*, 976 F.2d 106, 111 (2d Cir.1992), cash collateral is defined as cash or cash equivalents in which the estate and an entity other than the estate have an interest and includes the rents of property subject to a security interest as provided in section 552(b) of the Code.

■ A bankruptcy judge construing an assignment of rent provision should take steps to ensure that the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued. *Butner v. U.S.*, 440 U.S. 48, 56, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Thus, if a prepetition security interest in rents is determined to be valid according to the law of the state in which the real property is located, it will ordinarily remain valid postpetition. *Id.* Here, I need not concern myself with the in-depth analysis addressed in *Vienna Park*, given the parties have assumed that Mutual has a valid, perfected security interest that would attach to the debtors' postpetition rents and income unless I decline to permit it.

With certain exceptions, section 552(b) reflects those principles expressed in *Butner*, providing in pertinent part that:

> Except as provided in sections 363 [and] 506(c), ... if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to ... rents ... of such property, then such security interest extends to such ... rents ... acquired by the estate after the commencement of the case to the extent provided by such security agreement and by appli-

cable non-bankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b).

■ Thus, the debtor in possession which seeks blanket authority to use rents subject to a perfected security interest must travel one of two roads; it may either (a) attempt to argue that those rents are exempted from the reach of the secured creditor's cash collateral umbrella by virtue of the last phrase of section 552(b), commonly referred to as the equities exception, or (b) obtain the consent of the entity that has an interest in such cash collateral or, failing that consent, seek court authorization to use the cash collateral after notice and a hearing pursuant to section 363(c)(2) of the Code. Since these debtors are pursuing the former route, it is section 552(b)'s equity exception to which I now turn.

■ As *Collier* points out and the parties agree, there is no one scenario to which application of the equities doctrine is limited. Rather, the examples provided by the courts and treatises are but a few of what surely can be deemed a non-exhaustive list. The theme that rings true to all of the examples, however, is that the exception offers a bankruptcy court, essentially a court of equity, considerable latitude in balancing the rights of competing creditor entities with the overall rehabilitative scheme of bankruptcy law. 4 L. King, *Collier on Bankruptcy* ¶ 552.02 at 552–6–9 (15th ed. 1992). But the salutary aim of fostering reorganization is not alone enough to deprive the creditor of his collateral. To answer the question of whether the equities warrant invocation of section 552(b)'s exception, one must first ask for what purpose and under what factual predicate those equitable powers are sought to be applied.

Whether section 552(b)'s equity exception may cover the payment of professional fees appears a novel issue, and as the parties concede, one on which the courts have commented only tangentially.

Judge Sellers, writing in *In re Willowood East Apartments of Indianapolis*, 114 B.R. 138, 145 (Bankr.S.D.Ohio 1990), dealt with two issues: (a) whether the secured creditor's interest attached to the debtor's rents; and (b) for what purposes and under what conditions the debtor could use those rents. In the final paragraphs of the opinion, Judge Sellers briefly touched on whether or not the debtor could use the rents towards a postpetition retainer. After correctly noting that the debtor's use of those cash collateral rents was governed by sections 361 and 363 of the Code, she discussed whether their use would cause a decrease in the value of the secured creditor's interest such that adequate protection was warranted. She concluded that such use would indeed erode the value of the creditor's collateral and that since no adequate protection had been offered she could not grant the debtor's request. In dicta, however, she noted that if the secured creditor, for ill-founded or frivolous reasons, commenced litigations which necessitated the debtor retaining counsel, then, pursuant to 11 U.S.C. § 552(b) or on general equitable principles, she might exempt the secured creditor's rents from the reach of that party's cash collateral net and allow the debtor to use those funds towards payment of a retainer. 114 B.R. at 145.

Judge Sufana faced a similar issue in *In re Wabash Valley Power Ass'n, Inc.*, 69 B.R. 471, 477 (Bankr.S.D.Ind.1987). There, the debtor sought to pay interim counsel fees out of rents over the objection of a creditor who claimed a security interest in those rents. Judge Sufana focused primarily on the applicability of section 506(c), not section 552(b), and cited a plethora of cases which discussed section 506(c). He did not rule on the applicability of either section 506(c) or 552 to the case, however, because it was unclear whether the creditor's interest extended to those rents and income. 69 B.R. at 477. Here, by contrast, it is admitted that the rents are Mutual's collateral.

The third case that even relates to the issue is *In re Jefferson Business Center Associates*, 135 B.R. 676 (Bankr.D.Colo. 1992). In that case, Judge Brooks looked at whether a creditor had perfected its interest in postpetition rents such that those rents could be deemed cash collateral, and whether those rents, if cash collateral, could be used to pay a retainer fee. After concluding that the rents were the creditor's cash collateral, Judge Brooks refused to permit the debtor to apply those rents towards a retainer in light of the secured party's objection. Discussing section 552(b) only in a footnote, Judge Brooks concluded his opinion by holding that since the secured creditor had objected to the debtor's motion, the debtor could not use any rents generated from the property to pay attorneys' fees for any purpose other than to preserve and maintain the secured creditor's collateral, absent the consent of the secured creditor or an order from the court. 135 B.R. at 682. The implication is that Judge Brooks found the equities exception inapplicable.

■ I do not agree with Mutual's initially expressed, but now abandoned, position that there is an absolute bar to allowing the use of rents to pay professional fees of the estate. Indeed, I can certainly envision circumstances where resort to section 552(b) could potentially allow a debtor to do what these debtors seek to do. For example, if a creditor were sufficiently oversecured, the debtor could argue that the equities tipped in favor of allowing it to tap into rents that would otherwise be cash collateral because the creditor would be adequately protected and not harmed. Similarly, if there were any unencumbered assets, or maybe even contributed funds, which would be used to complete construction, thereby increasing the value of the secured creditor's collateral, the equities well might tip in favor of cutting off all or some portion of the interest in rents because the creditor would be protected by the increased value of the building and would otherwise receive a windfall. But where a lender is undersecured, the debtor's use of that lender's cash collateral, absent adequate protection, would clearly cause a decrease in the value of that creditor's property in which the debtor had an interest, *In re Willowood East Apart-*

*ments of Indianapolis,* 114 B.R. at 145, and would constitute an improper taking of the secured creditor's collateral. The bottom line is that once we depart from using the rents to pay the ordinary operating expenses of the property, which serve to preserve the value of the creditor's collateral, unless the creditor is demonstrably oversecured, we run smack into the need for adequate protection. Whereas on a visceral level I am quite sympathetic to the pleas of the debtors and the Committee that reorganization aims ought be paramount, I simply cannot ignore the effects of what I am being asked to approve.

■■■■ Once the secured creditor has established that his interest in the rents is valid, the burden, as with every other situation in which the concept of adequate protection of an undersecured lender's interest arises, is on the debtor in possession to prove that the secured creditor will receive the value for which he bargained. *In re Martin,* 761 F.2d 472, 474 (8th Cir.1985); *Delbridge v. Production Credit Association and Federal Land Bank,* 104 B.R. 824, 827 (E.D.Mich.1989). The debtors have not suggested, let alone shown, that Mutual is an oversecured creditor. The Committee accuses Mutual of making a bald assertion that its collateral value is declining. Yet in the next breath, the Committee makes its own bald assertion that there is absolutely no evidence that Mutual's collateral is declining in value. *See Memorandum of Law of Official Committee* at 14. Stated simply, the debtors have not proven, as they are required to, that Mutual's interest will be adequately protected if they dip into rents that would otherwise constitute Mutual's cash collateral.

■■■■ What the debtors seek, in essence, is authority to pay professional fees from rents and income without having to address section 506(c) of the Bankruptcy Code. Generally, unless the creditor is oversecured, the administrative expenses of a debtor's case are not to be charged against his collateral because a secured creditor's interest in collateral is a property right which is not impaired in bankruptcy proceedings. *Matter of CD Elec. Co., Inc.,* 146 B.R. 786, 788 (Bankr.N.D.Ind.1992); *cf. General Electric Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodservice Corp.),* 739 F.2d 73, 76 (2d Cir.1984) ("*Flagstaff I*"); *In re Trim–X, Inc.,* 695 F.2d 296, 301 (7th Cir.1982); *In re Evanston Beauty Supply, Inc.,* 136 B.R. 171, 175 (Bankr.N.D.Ill.1992); *In re Blue Ridge Motel,* 126 B.R. 477, 479 (Bankr.W.D.Pa.1991). Instead, administrative expenses are to be paid from the debtor's unencumbered assets. *In re Evanston Beauty Supply, Inc.,* 136 B.R. at 175. The rationale for this rule is that the trustee or debtor in possession represents the interests of unsecured creditors rather than secured creditors. *Id.,* citing *In re Trim–X, Inc.,* 695 F.2d at 299–301.

■■■■ Notwithstanding this broad prohibition, a trustee or debtor in possession may collect fees and expenses from encumbered assets if either (a) the party on whose behalf the rents and income are held as cash collateral consents impliedly or expressly, or (b) if the trustee or debtor in possession meets the exception set forth in 11 U.S.C. § 506(c). *CD Elec. Co., Inc.,* 146 B.R. at 789; *In re Chicago Lutheran Hosp. Ass'n,* 89 B.R. 719, 730–31 (Bankr. N.D.Ill.1988). A professional must forego compensation and reimbursement of expenses if an estate has no unencumbered assets and the professional is unable to prove either of the above. *CD Elec. Co., Inc.,* 146 B.R. at 789, *citing,* among other cases, *In re Energy Cooperative, Inc.,* 55 B.R. 957, 964 (Bankr.N.D.Ill.1985).

■■■■ Pursuant to section 506(c), recovery can be had if three criteria are met: (1) the expenditure is reasonable; (2) the expenditure is necessary in preserving or disposing of the secured creditor's collateral; and (3) the secured creditor benefits directly from the expenditure. *Flagstaff I,* 739 F.2d at 76; *Trim–X, Inc.,* 695 F.2d at 299; *CD Elec. Co., Inc.,* 146 B.R. at 790; *In re Evanston Beauty Supply, Inc.,* 136 B.R. at 176; 11 U.S.C. § 506(c). Courts construe this exception narrowly, *Trim–X, Inc.,* 695 F.2d at 301, and determine whether section 506(c) is applicable based on the

facts of each case. *Evanston Beauty Supply, Inc.*, 136 B.R. at 176, citing *Chicago Lutheran Hosp. Asso.*, 89 B.R. at 727. One simply cannot ignore the gloss which the courts and this Circuit in particular put on section 506(c) when one is asked to approve use of collateral without adequate protection under section 552(b). The concepts which underlie sections 506(c) and 363 are rooted in notions of unjust takings of property rights, which notions pervade bankruptcy administration. As a result, the equities alluded to in section 552(b) must be considered with an eye toward the rights of the secured creditor.

Accordingly, on the facts presented, the debtors' request must be denied.